UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA Y. HERNANDEZ,

        Plaintiff,                    Civil Action No. 10-cv-14364

     v.                        District Judge Robert H. Cleland
                                   Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 9,11)**

Plaintiff Sheila Hernandez ("Plaintiff" or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 9, 11) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 2, 10).

## I. RECOMMENDATION

For the reasons set forth below, this Court finds the ALJ properly considered Plaintiff's impairments and testimony and his determination of Plaintiff's residual functional capacity ("RFC") is supported by substantial evidence. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

At the hearing before the ALJ, Plaintiff changed her alleged onset of disability date to January 18, 2007. (Tr. 12.) The Commissioner denied Plaintiff's disability application on June 23, 2006. (Tr. 65.) Plaintiff then filed a request for a hearing, and on August 18, 2008, she appeared with counsel before Administrative Law Judge ("ALJ") David F. Neumann, who considered the case *de novo*. (Tr. 9-19.) In a December 3, 2008 decision, the ALJ found that Plaintiff was not disabled. (Tr. 19.) The ALJ's decision became the final decision of the Commissioner on August 27, 2010 when the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff filed this suit on November 1, 2010. (Dkt. 1.)

### B. Background

Plaintiff was 38 years old at the time of the hearing. (Tr. 14.) Plaintiff completed high school in Puerto Rico. (Tr. 14.) She has past work as a teacher's aide. (Tr. 14.)

#### 1. Plaintiff's Testimony

At the August 18, 2008 hearing before the ALJ, Plaintiff testified regarding her history of lupus and depression. (Tr. 32.) She said that there are days where she is in so much pain that she cannot get up from her bed and that when she is depressed she does not want to see anyone and, "I spend all the time in my room crying." (Tr. 32.) Plaintiff was laid off from her job as an assistant teacher on June 17, 2006. (Tr. 32.) She said, "I would have . . . quit anyway because of . . . depression and the terrible pain in my body." (Tr. 33.)

At the time of her testimony, Plaintiff was taking Prozac. (Tr. 33.) When asked by the ALJ if the Prozac helped her, Plaintiff replied, "[m]ore or less." (Tr. 33-4.) She later said that one of the

side effects of taking Prozac is that it makes her, "feel like a zombie." (Tr. 41.)

Plaintiff testified that she gets, "very, very nervous" and "cannot sleep." (Tr. 42.)  However, she also testified that she cannot get out of bed four or five days a week.  (Tr. 42.)  She said she has to lie down almost all day even though she does not take naps.  (Tr. 37.)

Plaintiff testified to being able to sit for half an hour without the need to change positions. (Tr. 34.)  She said she can stand for less than a half hour.  (Tr. 35.)  Plaintiff testified she is unable to lift a gallon of milk and that she cannot push any amount of weight.  (Tr. 35.)

With regard to daily activities, Plaintiff testified  to being able to dress herself sometimes, depending on the clothes that she wears.  (Tr. 37.)  She shops but never by herself.  (Tr. 38.)  She said she does not cook, wash clothes, vacuum, take care of her grandchild or dog, garden or drive. (Tr. 38-9.)  Plaintiff testified to having panic attacks and cited these as the reason she no longer drives. (Tr. 40.)  Plaintiff said she sometimes washes dishes, but that her husband or daughter are always there to help.  (Tr. 38.)  Her husband or daughter also take her to church every Sunday.  (Tr. 39.)

### 2. Medical Evidence

Plaintiff was diagnosed with lupus on January 30, 2006 by Dr. Mustapha Mallah, a specialist in internal medicine and rheumatology.  (Tr. 174.)  Dr. Mallah prescribed Plaintiff prednisone. (Tr. 174.)

Plaintiff visited the emergency room on March 2, 2006 complaining of pain in her leg and arm as a result of lupus. (Tr. 166.)  The ER doctor, upon releasing Plaintiff, noted that her condition was "improved" and "stable." (Tr. 168.)

On March 13, 2006, Plaintiff again visited Dr. Mallah, who wrote that Plaintiff's pain in her

joints increased because she overused her joints.  (Tr. 170.)  While noting Plaintiff's lupus, Dr. Mallah also suggested that Plaintiff exhibited more symptoms of fibromyalgia including, "diffuse pain, tender points, sleeping disturbance and dizziness." (Tr. 170.)  Dr. Mallah changed Plaintiff's medication from prednisone to Celebrex. (Tr. 170.)

On June 21, 2006 Dr. Mohammad Azimi reviewed Plaintiff's medical records on behalf of the State DDS.  Dr. Azimi acknowledged that Plaintiff had been treated for alleged lupus and pain.  (Tr. 190.)  However, he went on to say that Plaintiff "does not seem limited because of pain, she is working, [s]hops, cooks, [and] [d]rives." (Tr. 190.)

Dr. Louis Torregrosa examined Plaintiff four times between February and June of 2007. (Tr. 252-62.)  He submitted a letter to the Office of Disability Adjudication and Review describing his findings after each appointment.  After Plaintiff's initial appointment on February 21, 2007, Dr. Torregrosa diagnosed Plaintiff with systemic lupus erythematosus ("SLE" or "Lupus") and secondary fibromyalgia.  (Tr. 260.)  Following her March 27, 2007 appointment, Dr. Torregrosa made a similar diagnosis but added, "she is feeling somewhat depressed at the present time."  (Tr. 254.)  Dr. Torregrosa prescribed Plaintiff Paxil to help with her depression and continued her on Plaquenil and Elavil.  (Tr. 254.)  Dr. Torregrosa made a similar diagnosis on May 29, 2007.  He increased her Elavil dosage but kept her other medications at the same dosage.  (Tr. 253.)  On June 21, 2007, Dr. Torregrosa opined that Plaintiff suffered from (1) fibromyalgia syndrome, (2) mild systemic lupus erythematosus, and (3) moderate-to-severe depression.  (Tr. 252.)

Plaintiff saw Dr. David Vila, a psychiatrist, seven times between October 2007 and April 2008. (Tr. 263-90, 311.)  After Plaintiff's initial appointment in October, 2007, Dr. Vila submitted a detailed assessment and a preliminary plan of service. (Tr. 271-77.)  He noted that Plaintiff did not

identify that she needed assistance with activities of daily living and diagnosed her with a Global

Assessment Functioning ("GAF") score of 55. (Tr. 276-77.)[1]  On March 31, he prescribed Plaintiff

Prozac after observing, "[p]atient still remains depressed, irritable, and agitated, fluctuates with

that." (Tr. 279.)  On April 28, 2008, Plaintiff told Dr. Vila, "I feel better on this new medication."

(Tr. 311.)  Dr. Vila stated Plaintiff was, "[l]ess irritable and agitated.  No stomach trouble.  Less

isolative and tired.  Seems to be responding."  (Tr. 311.)  He continued the same course of

medication. (Tr. 311.)

### 3.  Vocational Expert's Testimony

Vocational Expert ("VE") Dr. Lois Brooks testified at the hearing.  (Tr. 47-51.)  The VE

stated that there are no transferable skills from Plaintiff's past work.  (Tr. 48.)  The ALJ then asked

the VE to consider the following hypothetical individual:

> [A]n individual of the claimant's age, education and past work
> experience who would require work, which is simple, unskilled work
> activity only requiring one, two and three-step instructions who could
> only lift or carry up to 10 pounds, who could stand and walk with
> normal breaks for a total of two hours in an eight-hour workday, who
> could sit with normal breaks for a total of six hours in an eight-hour
> workday, who could perform using and pulling motions with her upper
> and lower extremities within those weight restrictions, and who could
> perform each of the following postural activities occasionally.
> Climbing ramps and stairs, balancing, stooping, kneeling, crouching
> or crawling.   And would have no significant communication in
> English. (Tr. 48-9.)

---

[1]A GAF score is a subjective determination that represents "the clinician's judgment of the
individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDERS, 30 (4th ed., Text Revision 2000).  It ranges from
100 (superior functioning)  to 1 (persistent danger of severely hurting self or others, persistent
inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of
death).  *Id.* at 32.  A GAF of 51 to 60 corresponds to "moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or
school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

The VE testified that person could not perform Plaintiff's "light" or "medium" past work because the hypothetical individual was limited to "sedentary" type work. (Tr. 49.) The ALJ then asked if there were any other jobs this hypothetical person could perform. The VE said that there were approximately 4,300 jobs in southeast Michigan that the hypothetical person could perform. (Tr. 49.) These jobs included, "some of the assembly small parts . . . [s]ome sorting . . . [and] [s]ome packaging jobs." (Tr. 49.) When the ALJ added Plaintiff's GAF score of 55 into his hypothetical, the VE said, "[t]hat would not change my answer." (Tr. 49-50.)

The ALJ then asked the VE if her answer would change if the person would be off task for three hours of an eight-hour day. The VE said that person would not be able to do any work. (Tr. 50.) Plaintiff's attorney then mentioned that Plaintiff is unable to get out of bed at least four days a week and asked the VE what type of absences would be tolerable for the jobs she described. The VE replied, "[m]aximum of two days off a month." (Tr. 50.)

### C.  Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

6

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.  The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2007 – Plaintiff's alleged onset date.  (Tr. 14.)  At step two, the ALJ found that Plaintiff had the following severe impairments: lupus and depression.  (Tr. 14.)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment.  (Tr. 15.)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform,

7

[L]ifting/carrying up to ten pounds; standing/walking for two hours out of an eight-hour workday; sitting for six hours out of an eight-hour workday; pushing and pulling of the upper and lower extremities within the weight restriction given above; she could perform occasional postural activities such as climbing ramps and stairs; balancing, stooping, kneeling, crouching, or crawling; she is limited to simple, unskilled work activity requiring only one, two, three step instructions; she is limited to jobs that require no significant communication in English and no work which requires math calculations and would be functioning with a GAF of 55 as defined in the DSM IV; this indicates an individual with moderate symptoms . . . or moderate difficulty in social, occupational or school functioning. (Tr. 16.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 18.) At step five, the ALJ relied on VE testimony in response to his hypothetical, and found that work existed in significant numbers that Plaintiff could perform: the ALJ found that 4,300 jobs existed in southeastern Michigan and 344,000 such jobs existed nationally. (Tr. 19.) Based on this and the evidence of the record on the whole, the ALJ found Plaintiff "not disabled." (Tr. 19.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial

8

evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).   In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts" (internal quotation marks omitted)).

9

### F. Analysis

#### 1. The ALJ Committed Harmless Error When He Did Not Include Fibromyalgia Among Plaintiff's Severe Impairments

Plaintiff's initial argument is that the ALJ committed an error at Step Two when he failed to list fibromyalgia among her severe impairments. (Dkt. 9, Pl's Mot. Summ. J. at 8.)

If the ALJ fails to list a severe impairment in step two of its analysis, "the error is harmless as long as the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of the claimant's impairments in determining her residual functional capacity." *Swartz v. Barnhart*, 188 Fed. App'x. 361, 368 (6th Cir. 2006); *see also Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps.") Here, the ALJ found that Plaintiff suffered from the severe impairments of lupus and depression (Tr. 14), and therefore continued with his analysis. His failure to also include fibromyalgia at Step Two is not reversible error.

Plaintiff also argues that by failing to list fibromyalgia among her severe impairments, the ALJ failed to take into account all of Plaintiff's impairments in assessing her RFC. (Pl's. Mot. Summ. J. at 8-9.)

"RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitation or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 at *2. The ALJ must "consider the limiting effects of all [of a claimant's] impairment(s) even those that are not severe, in determining [a claimant's] residual functional capacity." 20 C.F.R. §404.1545(e).

10

While the ALJ did not specifically reference Plaintiff's fibromyalgia in making his RFC finding, his opinion supports that he did consider the medical evidence pertaining to that condition. (Tr. 17.) The ALJ specifically mentioned treatment notes from March 2006 and June 2007, both of which documented Plaintiff's fibromyalgia. (Tr. 17, 170, 252.) More specifically, on March 13, 2006, Dr. Mallah noted that Plaintiff described signs and symptoms of fibromyalgia, including diffuse pain, tender points, sleeping disturbance, and dizziness. (Tr. 170.) As noted by the ALJ, Dr. Mallah observed tenderness to palpation of most of Plaintiff's joints without limited range of motion or synovitis. (Tr. 170.) Dr. Mallah diagnosed SLE and fibromyalgia. (Tr. 170.) On June 21, 2007, Dr. Torregrosa evaluated Plaintiff and noted that she had mild SLE and severe depression and fibromyalgia. (Tr. 252.) As noted by the ALJ, Dr. Torregrosa found diffuse bilateral symmetrical point tenderness. (Tr. 252.) Immediately after considering (and citing) these treatment notes that reference fibromyalgia, the ALJ concluded that the medical evidence supported his RFC – which restricted Plaintiff to sedentary work. (Tr. 17.)

The record also contains evidence that Plaintiff's SLE and fibromyalgia were related. For example, on February 25, 2007, Dr. Torregrosa noted that Plaintiff had symptoms of fibromyalgia and diagnosed SLE with secondary fibromyalgia. (Tr. 261.) On June 4, 2007, Dr. Torregrosa again diagnosed SLE and noted that there was a combination of fibromyalgia and depression presented in Plaintiff's clinical situation, which exacerbated her symptoms. (Tr. 253.) To the extent that the conditions were related, the ALJ's explicit findings regarding Plaintiff's SLE also accounted for her fibromyalgia. *See Blair v. Comm'r Soc. Sec.*, No 10-5104, U.S. App. LEXIS at *8-10 (6th Cir. 2011) (showing that lupus and fibromyalgia are often related). Additionally, Plaintiff does not explain how her fibromyalgia caused limitations exceeding those in the ALJ's very restrictive RFC

11

finding.   Based on the medical records considered by  the ALJ, the Court does not find it was

reversible error to fail to explicitly reference Plaintiff's fibromyalgia.

### 2. The ALJ Properly Credited Plaintiff's Testimony

Plaintiff contends that the ALJ impermissibly discounted her complaints of pain and

misstated the extent of her engagement in activities of daily living.  (Pl's. Mot. Summ. J. at 10.)

Regarding the assessment of a claimant's credibility, SSR 96-7p states:

> [T]he adjudicator must consider the entire case record and give
> specific reasons for the weight given to the individual's statements.
> The finding of credibility of an individual's statements cannot be
> based on an intangible or intuitive notion about an individual's
> credibility.  The reasons for the credibility finding must be grounded
> in the evidence and articulated in the determination or decision.  It is
> not sufficient to make a conclusory statement that "the individual's
> allegations have been considered" or that "the allegations are (or are
> not) credible."

Moreover, SSR 96-7p contains a procedural requirement that requires the ALJ's decision to

list "specific reasons" for his credibility determination in his decision:

> The determination or decision must contain specific reasons for the
> finding on credibility, supported by the evidence in the case record,
> and must be sufficiently specific to make clear to the individual and
> any subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

An ALJ's findings regarding the credibility of an applicant are to be accorded great weight

and deference, particularly since only the ALJ is charged with the duty of observing a witness's

demeanor.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Jones v. Comm'r of

Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's

determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which we do not, of observing a witness's demeanor while testifying.") (citations

omitted).  The regulations further mandate that an ALJ must "not reject statements about the intensity and persistence of pain or other symptoms or about the effect symptoms have on ability to work solely because the available objective medical evidence does not substantiate statements." 20 C.F.R. §404.1529.

The ALJ must consider other factors when determining the extent of symptoms, such as pain. 20 C.F.R. §404.1529(c)(4).  Factors relevant to symptoms include

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms; and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §404.1529(c)(3)(I-vii).

Applying the law to this case, the ALJ properly assessed Plaintiff's credibility.  First the ALJ noted that Plaintiff, in her Activities of Daily Living Questionnaire, attested to helping to take care of her dog, cooking, driving and shopping for clothes and food.  (Tr. 122-24.)  The ALJ found that these activities, combined with the fact that Dr. Torregrosa classified Plaintiff's lupus as mild, contradicted Plaintiff's testimony that she needs to remain in bed four to five days a week.  (Tr. 17.)

Plaintiff argues that the ALJ's reliance on the questionnaire was error because it was outdated: "each and every factor relied upon by the ALJ was no longer true as of the time of [P]laintiff's disability onset date." (Pl's. Mot. Summ. J. at 11.)[2]  But, as Defendant correctly asserts,

---

[2]As noted above, Plaintiff's alleged onset date was January 18, 2007.  (Tr. 14.)  Plaintiff submitted the Activities of Daily Living Questionnaire on April 5, 2006.  (Tr. 128.)

13

there is no indication that Plaintiff's condition worsened from the time of the questionnaire to the time of her testimony. (Dkt. 11, Def.'s Mot. Summ. J. at 13-14.)[3]  Plaintiff was diagnosed with lupus in March 2006. (Tr. 170.)  As late as June 2007, Plaintiff's lupus was still described as "mild." (Tr. 252.) Plaintiff's April 2008 appointment with Dr. Vila suggests that Plaintiff responded well to Prozac and that her mental state was improving. (Tr. 311.)  Indeed, Plaintiff told Dr. Vila, "I feel better on this new medication."  (Tr. 311.)

With regard to the location, frequency, and duration of Plaintiff's pain, Plaintiff testified that she cannot get out of bed four or five days a week.  (Tr. 42.)  This testimony, however, is inconsistent with the information Plaintiff provided her doctors.  (Tr. 166-322.)  There is no evidence that she indicated to any of her doctors that she was unable to get out of bed the majority of time due to her pain.  (*Id*.)  Indeed, at most, she indicated pain in her joints and tenderness.  (Tr. 170.)  This is consistent with the medications that were prescribed – prednisone, Celebrex, Paxil, Plaquenil, Elavil, and Prozac.  (Tr. 174, 170, 254, 279.) Plaintiff did not testify to any treatment other than medication or self-imposed measures she used, if any, to relieve her pain.

Plaintiff further contends that the ALJ impermissibly discounted her complaints regarding the side effects of her medication.  Specifically, Plaintiff argues that the ALJ impermissibly discounted her assertion that she felt "like a zombie" (Tr. 41) when she took Prozac. (Dkt. 9, Pl's. Mot. Summ. J. at 14.)

In considering the side effects of a plaintiff's medication, an ALJ must consider "[t]he type,

---

[3]*Cf. Hamblin v. Apfel*, 7 F. App'x. 449, 451 (6th Cir. 2001).  There is no evidence that Plaintiff's condition either improved or worsened as evidenced by Dr. Vila's report. (*See* Tr. 311.) Plaintiff's latest treatment for her lupus took place more than a year prior to her testimony and that examination revealed her condition  to be mild.  (Tr. 252.)

dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms." 20 C.F.R. §404.1529(c)(3)(iv). In developing his RFC, the ALJ must consider "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication). SSR 96-8p at *5. Furthermore, with regard to side effects, the Sixth Circuit has noted,

> Like pain, the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. Also like pain, side effects can be a "highly idiosyncratic phenomenon" and a claimant's testimony as to their limiting effects should not be trivialized. Therefore, if the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s).

*Davidson v. Sec'y of Health and Human Servs.*, 995 F.2d 1066, 1993 WL 206472 at *3 (6th Cir. 1993) (quoting *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988) *modified on other grounds*, 859 F.2d 1396 (9th Cir.1988)).

The ALJ specifically referenced Dr. Vila's report from April 28, 2008 in which Plaintiff "reported . . . feeling better on the new medication . . . less irritable and agitated." (Tr. 17.) In fact, the report stated that Plaintiff felt "better on [the] new medication" and was less irritable, agitated, isolative and *tired*. (Tr. 311.) There is no indication that Plaintiff reported feeling like a "zombie" to Dr. Vila. (Id.) Moreover, her report that she felt "less tired," seems to contradict her testimony regarding feeling like a "zombie." Consequently, the ALJ supported his decision to discount Plaintiff's testimony regarding the side effects of her medication. In short, substantial evidence supports the ALJ's decision to discount Plaintiff's testimony regarding the intensity of her pain and the side effects of her medication. Moreover, the ALJ followed the mandates of 20 C.F.R. §

15

404.1529(c)(4) by specifically citing not only the objective medical evidence, but Plaintiff's daily activities, and her own reports to her doctors.

### 3. The ALJ's Hypothetical Was Accurate

Plaintiff also asserts that the ALJ's hypothetical was  inaccurate because it failed to specifically state that Plaintiff was moderately limited in concentration, persistence, or pace ("CPP").  Specifically, Plaintiff claims the ALJ's hypothetical limitation to simple, unskilled work did not account for Plaintiff's moderate concentrational difficulties.  (Dkt. 9, Pl's. Mot. Summ. J. at 12.)

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

Plaintiff's assignment of ALJ error – that hypothetical limitations such as "simple," and "unskilled" fail to account for moderate concentrational deficiencies – is not uncommon and the case law resolves it both ways.  This Court acknowledges the relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks[4] – but

---

[4]*See e.g.*, *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations."); *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs."  These parameters are not sufficient,

also acknowledges that other cases have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting an express concentration or pace limitation.[5] (*See* Dkt. 12, Def.'s Mot. at 11.)

In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g.*, *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning

and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job." (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation . . . into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10-10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[5]*See e.g.*, *Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible."); *Latare v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."); *Bohn-Morton v. Comm'r Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (There is not "a rigid checklist of restrictions that must be included" in an ALJ's hypothetical).

17

anything less than 20%-30% of the time at work.  Thus, 'moderate' concentration problems . . . need

to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of

that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with

co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D.

Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even

at a simple, unskilled, routine job.").

However, the Court also finds that there is no bright-line rule requiring remand whenever

an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a

moderate limitation in concentration.  Rather, this Court must look at the record as a whole and

determine if substantial evidence supports the ALJ's hypothetical and RFC assessment:

> To be sure, all of the ALJ's findings, including those summarized on
> a PRTF, must be harmonized and incorporated into the hypothetical
> questioning of the VE. Yet, a particular assessment on a PRTF does
> not mandate a rigid checklist of restrictions that must be included in
> this questioning.  Rather, a case-by-case determination is required,
> under which the ALJ must translate the broad PRTF classifications
> into a set of specific limitations that are properly rooted in the
> administrative record.

*Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (finding that

"unskilled" work limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant

"often" experiences concentration, persistence or pace issues); *Lewicki v. Comm'r of Soc. Sec.*, No.

09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such

moderate limitations preclude the performance of even some simple, unskilled tasks.  Plaintiff does

not, however, explain why the facts of this particular case require a more detailed hypothetical

question to adequately account for his own moderate limitations in concentration, persistence, or

pace."); *Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16,

18

2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for "moderate" concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.")

In this case, it was the ALJ, rather than any medical professional, who concluded that Plaintiff had "moderate" difficulties in CPP. (Tr. 15; 166-322.) But it was also the ALJ who had the obligation of crafting an RFC that accounted for this Step-Three finding. *See Messer v. Astrue*, No. 09-342-DLB, 2010 WL 4791956, at *6 (E.D. Ky. Nov. 18, 2010) ("[D]etermining an individual's RFC is the sole province of the ALJ; it is a statutory assessment that is based upon all the relevant evidence in the record . . . ."); *Bohn-Morton*, 389 F. Supp. 2d at 807. The ALJ did so by including in the hypothetical question not only a limitation to simple, unskilled work activity requiring only one-, two-, or three-step instructions (Tr. 48), but also by adding that the person would be functioning with a GAF score of 55, which he defined as involving moderate symptoms, for example, a flat affect and circumstantial speech, and panic attacks (Tr. 50). The ALJ further defined

a GAF score of 55 as including  moderate difficulty in social, occupational, or school functioning, for example, having few friends and conflicts with peers and coworkers. (Tr. 50.)  By combining Plaintiff's GAF and its attendant limitations with the additional limitations  of  simple, unskilled, work requiring only one, two, three-step instructions, the ALJ created a hypothetical that adequately accounted for his own broader assessment of Plaintiff's moderate limitation in concentration, persistence or pace.

### G. Conclusion

For the foregoing reasons, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED

## III.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise  response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the

20

Court determines that any objections are without merit, it may rule without awaiting the response.


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  August 30, 2011


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 30, 2011.


s/Jane Johnson
Deputy Clerk